# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

**ROBERT EISENBERRY,** :

    **Plaintiff** :

                                 **CIVIL ACTION NO. 3:08-1337**

    **v.** :

                                   **(MANNION, M.J.)**

**SHAW BROTHERS, L.L.C.; SHAW** :
**BROTHERS DONKEY BALL,**
**L.L.C., TIMOTHY E. SHAW and** :
**KIM M. SKERPON,**

                                 :

    **Defendants**

                                   :

## **MEMORANDUM AND ORDER**[1]

Pending before the court are: (1) a motion for summary judgment filed on behalf of defendants Shaw Brothers, L.L.C., Shaw Brothers Donkey Ball, L.L.C., and Timothy E. Shaw, ("Shaw defendants"), (Doc. No. 14); and (2) a motion for summary judgment filed on behalf of defendant Kim Skerpon. (Doc. No. 16).

By way of relevant procedural background, on July 15, 2008, the plaintiff filed the instant personal injury action based upon diversity jurisdiction. (Doc. No. 1). An amended complaint was filed on September 17, 2008. (Doc. No. 4). Answers to the amended complaint and cross-claims were filed by defendant Skerpon and the Shaw defendants on October 14, 2008, (Doc. No.

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

8), and November 17, 2008, (Doc. No. 9), respectively.

On August 12, 2009, a motion for summary judgment was filed on behalf of the Shaw brothers, (Doc. No. 14), along with a statement of material facts and exhibits, (Doc. No. 14), and a supporting brief. (Doc. No. 15).

On August 14, 2009, defendant Skerpon filed her motion for summary judgment, (Doc. No. 16), along with a statement of material facts and exhibits, (Doc. No. 16), and a supporting brief. (Doc. No. 17).

After having been granted a *nunc pro tunc* extension of time to do so, (Doc. No. 22), on September 25, 2009, the plaintiff filed a brief in opposition to defendant Skerpon's motion for summary judgment, (Doc. No. 26), along with a response to her statement of material facts, (Doc. No. 27), and a response to her motion for summary judgment. (Doc. No. 28). On the same date, the plaintiff filed an answer to the statement of material facts filed by the Shaw defendants, (Doc. No. 29), along with a brief in opposition to their motion for summary judgment, (Doc. No. 30), a response to their motion for summary judgment, (Doc. No. 31), and supporting exhibits. (Doc. No. 32).

Reply briefs were filed in support of the Shaw defendants' motion for summary judgment, (Doc. No. 35), and defendant Skerpon's motion for summary judgment, (Doc. No. 36), on October 2, 2009. (Doc. No. 35).

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." [Fed.R.Civ.P. 56©)](.).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56©) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

[Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)](.).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. [Id.](.) The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." [Id. at 325](.).

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." [Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988)](.)(citations omitted). Material facts are those which will effect the outcome of the trial under governing law. [Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)](.). The court may not weigh the evidence nor make credibility determinations. [Boyle v. County of Allegheny,](.)

3

139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

With the above in mind, the court looks to the allegations set forth in the plaintiff's amended complaint and the materials which the defendants have submitted in an attempt to establish that there are no material issues of fact for trial. In his amended complaint, the plaintiff alleges that, at all relevant times, the Shaw defendants were engaged in the business of training donkeys for fund raising events. Defendant Timothy E. Shaw was a principal shareholder and officer of Shaw Brothers, L.L.C., and/or Shaw Brothers Donkey Ball Co., L.L.C., and Shaw Brothers Donkey Ball, Co.

The plaintiff alleges that defendant Skerpon, was the owner, manager, and lessor of a barn located at 17C and Dry Brook Road, Chemung, New York, and that on or about September 4, 2007, defendant Skerpon leased and/or rented her barn to the Shaw defendants, who through their agents, subcontractors, and/or servants were responsible for maintenance and care of the barn. At the barn, the plaintiff alleges that the Shaw defendants housed, bordered and fed numerous donkeys which were used in furtherance of the Shaw defendants' business. On that date, the plaintiff alleges that he was not

an employee of the Shaw defendants and/or defendant Skerpon.

On or about September 4, 2007, the plaintiff alleges that he was assisting defendant Timothy E. Shaw with stacking and moving bales of hay at the barn in order to feed and house the donkeys.  The plaintiff alleges that he was on the second floor loft of the barn with Timothy E. Shaw's knowledge and permission.  At that time, unknown to the plaintiff, he alleges that there were planks and boards missing from the floor, and that the gaps and missing boards were concealed by loose hay covering the floor of the loft.  The plaintiff alleges that he stepped toward the end of the second floor loft and fell due to the missing and/or broken boards of the barn loft floor. As a result of the fall, the plaintiff alleges that he fractured his T7 vertebrae causing him permanent paralysis making him a paraplegic.

As a result of the defendants' actions, the plaintiff alleges that he has suffered and will continue to suffer severe and permanent injuries and paralysis to his spine and will never be able to walk.  As a result of his injuries, the plaintiff further alleges that he has undergone and, in the future will undergo, great physical and mental suffering, great inconvenience in carrying out his daily activities, and loss of life's pleasures and enjoyment. The plaintiff alleges that he has sustained work loss, loss of opportunity and permanent diminution of his earning capacity. Further, the plaintiff alleges that, as a result of his injuries, he was forced to incur liability for his medical treatment, medications, hospitalization and similar expenses in an effort to

restore his health. Because of the nature of his injuries, the plaintiff alleges that he has been advised that he will be forced to incur similar expenses in the future.

Based upon the above allegations, the plaintiff sets forth claims of negligence against both the Shaw defendants and defendant Skerpon. As a result of the defendants' alleged negligence, the plaintiff is seeking compensatory damages.

In an attempt to establish that there are no material facts in dispute with respect to the plaintiff's claims and that they are entitled to summary judgment as a matter of law, the Shaw defendants have filed a motion for summary judgment along with a statement of material facts, the following of which are undisputed by the plaintiff.

On September 4, 2007, the plaintiff arrived at a barn in New York State, which was leased by the Shaw defendants, to assist with stacking hay bales. At the time of the incident at issue, the plaintiff was not employed by the Shaw defendants. The barn consists of three levels – the basement level is where the donkeys are kept for the Shaw defendants' basketball business; the second or main level, which is entered by the street, is the primary level of the barn; and the third level is referred to as the mow or loft area and is the highest level of the barn.

On the day of the incident, the plaintiff had arrived early to assist defendant Timothy E. Shaw in stacking hay bales on the main or primary

6

street level of the barn. After some time, another individual, Jesse Snell, arrived to assist with the stacking of hay. The plaintiff contends that he climbed up a ladder on the left loft and accessed that loft area. Mr. Snell was positioned in the center loft area at the end of the hay elevator. Mr. Shaw was outside of the barn loading hay from the wagon onto the elevator which would then transport it to Mr. Snell. Mr. Snell would then stack the hay bales in the loft area.

The plaintiff testified that, after reaching the loft area, he noticed that the hay bales were stacked almost to the edge of the loft. Shortly after entering the loft area, the plaintiff fell. There are no witnesses to the fall itself, and the plaintiff has not produced a liability expert report offering any opinions on which conditions of the barn may have caused him to fall.

Based upon the undisputed facts, the Shaw defendants argue that they are entitled to judgment as a matter of law on the plaintiff's negligence claim because the plaintiff cannot definitively say that it was the condition of the loft that caused his fall.

To prevail on his claim of negligence, the plaintiff must establish by a preponderance of the evidence four elements under Pennsylvanian law: (1) the defendants owed him a duty; (2) the defendants breached that duty; (3) there is a causal connection between the breach and the resulting injury; and, (4) the plaintiff suffered an injury. Estate of Zimmerman v. Southeastern Pennsylvania Transp. Auth., 168 F.3d 680, 684 (3d Cir. 1999) (citing Estate

7

of Swift v. Northeastern Hosp. of Philadelphia, 690 A.2d 719, 722 (Pa. Super. 1997))[2]. The only issue in the case at hand relates to the element of causation.

Even if the plaintiff can show that the defendants negligently breached a duty owed to him and that he was injured, he must still show a link between the breach and the injury. In other words, he must show that the breach proximately caused the injury. Hamil v. Bashline, 392 A.2d 1280, 1284 (Pa. 1978); see id. ("[T]he mere occurrence of an injury does not prove negligence and . . . an admittedly negligent act does not necessarily entail liability."). "Proximate cause is a term of art denoting the point at which legal responsibility attaches for the harm to another arising out of some act of the defendant." Id. To establish the point of attachment, the plaintiff must show that the breach of duty was a "substantial factor" leading to the injury. Id. The breach need not be the exclusive cause of the injury, but merely a substantial cause regardless of whether other factors contributed to the injury. Id. at 1284-85. But the plaintiff cannot establish proximate cause if he would have suffered the injury "even in the absence" of the defendant's breach. Id. at 1284.

The plaintiff may prove causation by direct or circumstantial evidence.

---

[2]The parties agree that a choice of law analysis is unnecessary in light of the similarity of the substantive law of Pennsylvania and New York. Moreover, all parties rely upon Pennsylvania substantive law in support of their respective positions.

8

Id. at 1285; Smith v. Bell Tel. Co. of Pennsylvania, 153 A.2d 477, 479 (Pa. 1959). While proximate cause cannot be established by conjecture or speculation, it can be established by circumstantial evidence, which allows a jury to "reason[] from it, without resort to prejudice or guess," to "reach the conclusion sought by plaintiff." Smith, 153 A.2d at 479. In examining the circumstantial evidence, the jury may make all permissible inferences "based upon all the evidence and the jurors' own knowledge and experiences." Id. The jury's conclusion need not "be the *only* one which logically can be reached." Id. at 479-80 (emphasis in original). As the Pennsylvania Supreme Court has held in explaining the use of circumstantial evidence,

> It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability. The judge cannot say as a matter of law which are facts and which are not unless they are admitted or the evidence is inherently incredible. Also, it is beyond the power of the court to say whether two or more reasonable inferences are 'equal' . . . . The right of a litigant to have the jury pass upon the facts is not to be foreclosed just because the judge believes that a reasonable man might properly find either way.

Id. at 480; see id. ("[W]hen a party who has the burden of proof relies upon circumstantial evidence and inferences reasonably deducible therefrom, such evidence, in order to prevail, must be adequate to establish the conclusion sought and must so preponderate in favor of that conclusion as to outweigh in the mind of the fact-finder any other evidence and reasonable inferences therefrom which are inconsistent therewith."). Because the determination of

9

proximate cause often depends on the resolution of factual questions and inference, the issue of whether the defendant's breach proximately caused the plaintiff's injury is usually a question of fact for the jury, unless there is no genuine issue of material fact. Hamil, 392 A.2d at 1284-85; Smith, 153 A.2d at 479-80.

In the instant case, the court finds that a genuine issue of material fact exists as to whether the defendants proximately caused the plaintiff's injury. The plaintiff relies upon circumstantial evidence. He cannot definitively state that he fell through floor boards which were rotted in the loft; rather, he can only state that the loft was in disrepair and that he fell, which he believes occurred because of the disrepair. To this extent, the plaintiff testified that he had gone up into the loft to help stack straw. (Doc. No. 14, Ex. A, pp. 37-38, 39). He testified that he was waiting for defendant Shaw to start the hay and straw up the elevator and that he had "just happened to turn around a little bit and I was gone." (Id. at p. 45). When questioned about the cause of his fall, the plaintiff testified that "[t]he floor was so rotten in that area, I was gone before I realized it." (Id. at p. 48). When asked if he had fallen through the floor, the plaintiff responded "Just about." (Id.). When questioned further, the plaintiff testified that he could feel "give" in the boards of the loft and tried to stay off of those boards that had give. (Id.). He testified, however, that he apparently was not able to stay off of the "right ones" when he fell. (Id. at pp. 48-49). The plaintiff testified that the wooden boards of the floor of the loft

were not fixed despite his expressed concerns to defendant Timothy Shaw by both himself and Shaw's brothers, and that the dangerous areas were concealed by hay such that it was not readily apparent. (Id. at pp. 51, 56). In support of his testimony, the plaintiff has submitted photographs of the barn in question which reflects obvious areas of disrepair[3]. (Doc. No. 32). Reasonable minds could properly infer that, under the conditions of the barn as described by the plaintiff and shown in the photographs, he fell because of the disrepair of the loft. Cf. Smith, 153 A.2d at 480-81 (finding that jury could properly infer proximate causation where plaintiff showed injury of sewage leaking into his basement and breach of negligently installed telephone pole that crushed sewage line). Accordingly, the court finds that the Shaw defendants are not entitled to summary judgment on the element of proximate cause.

With respect to the motion for summary judgment filed on behalf of defendant Skerpon, she too argues that she is entitled to summary judgment on the element of causation. For the reasons discussed above, defendant Skerpon's motion for summary judgment will also be denied on this basis.

In addition, defendant Skerpon argues that she is entitled to summary judgment as an out of possession landlord who owes no duty to the plaintiff.

---

[3] The defendants challenge the plaintiff's use of the photographs arguing that the photographs are of the barn, in general, and not of the specific area where the plaintiff fell. Whether the photographs in question depict the condition of the relevant area is an issue of fact to be resolved at trial.

11

In support of this contention, defendant Skerpon presents the following facts which are not in dispute. Defendant Skerpon believed that her husband owned the barn since approximately 1991. After William Skerpon purchased the property, he leased the property to Timothy Shaw for his use in connection with the Shaw Brothers Donkey Ball business. The lease has not been made part of the record before the court as none of the parties to the lease have been able to locate it.

In 2003, defendant Skerpon purchased the barn and surrounding acreage from her husband, William Skerpon, and continued to lease the property to Timothy Shaw in the same manner as her husband. She made no changes to the barn prior to purchasing it from her husband nor did she make any improvements or undertake any construction projects or repairs to the barn after she purchased it. Moreover, she never inspected the barn from the time she purchased the property until the date of the plaintiff's accident. Defendant Skerpon never had any conversations with either Timothy Shaw or the plaintiff about repairs needed to the barn[4].

Prior to the incident at issue, defendant Skerpon visited the barn to bring her children to seek baby donkeys being born. At these times, defendant Skerpon would enter the barn at the lower most level where the donkeys were housed.

---

[4]In fact, Mr. Shaw testified that he did not even know that defendant Skerpon purchased the property until the time of his deposition in this action.

The barn houses donkeys and hay. The donkey shows are not conducted in the barn area.

Upon review of the record, the court finds that there are material issues of fact which would preclude summary judgment on the issue of whether defendant Skerpon did not owe a duty to the plaintiff as an out of possession landlord. Under Pennsylvania law, landlords out of possession generally are not liable for injuries suffered by third parties on the leased property. Dinio v. Goshorn, 270 A.2d 303 (Pa. 1969); Dorsey v. Continental Assoc., 591 A.2d 716, 718 (Pa.Super. 1991), appeal denied, 612 A.2d 985 (Pa. 1992). However, there are a number of exceptions to this general rule. Pennsylvania courts have enunciated the following exceptions to the general rule of nonliability applicable to out of possession landlords:

A landlord out of possession may incur liability: (1) if he has reserved control over a defective portion of the demised premises, (citations omitted), (2) if the demised premises are so dangerously constructed that the premises are a nuisance per se, (citations omitted), (3) if the lessor has knowledge of a dangerous condition existing on the demised premises at the time of transferring possession and fails to disclose the condition to the lessee, (citations omitted), (4) if the landlord leases the property for a purpose involving the admission of the public and he neglects to inspect for or repair dangerous conditions existing on the property before possession is transferred to the lessee, (citations omitted), (5) if the lessor undertakes to

13

repair the demised premises and negligently makes the repairs, (citations omitted), or (6) if the lessor fails to make repairs after having been given notice of and a reasonable opportunity to remedy a dangerous condition existing on the leased premises, (citations omitted). Dorsey v. Continental, 591 A.2d at 718-19 (1991), Henze v. Texaco, Inc., 352 Pa.Super 538, 508 A.2d 1200, 1202 (1986).

Here, there is apparently no dispute that defendant Shaw entered into a written lease with William Skerpon in 1991. The record reflects that, in 2003, defendant Kim Skerpon bought the property from her husband, unbeknownst to defendant Shaw[5], and apparently assumed the terms of the lease. Exactly what those terms were, however, are not part of the record before the court[6]. In light of the fact that the specific terms of the lease are not before the court, there is a material issue of fact as to whether the lease contained such terms as to permit defendant Skerpon to maintain a certain level of control over the premises which would place her within one of the exceptions to the nonliability

---

[5] Defendant Shaw testified that he had only learned that defendant Skerpon purchased the property from her husband at of the time of his deposition for use in the instant action. (Doc. No. 16, Ex. B, p. 25).

[6] Apparently, there is some dispute between defendant Shaw and defendant Skerpon as to what the terms of the lease were. To this extent, defendant Shaw testified that he was only responsible for day-to-day maintenance and repairs, and that it was the owner who was responsible for the more major repairs such as replacing the roofing, siding and flooring. Defendant Skerpon, to the contrary, testified that defendant Shaw was to perform all maintenance and repairs to the property.

14

of an out of possession landlord. Given this, defendant Skerpon's motion for summary judgment will be denied on this basis as well.

As a final matter, defendant Skerpon argues that she is entitled to discovery sanctions against the plaintiff. To this extent, she argues that interrogatories and demands for discovery and inspection were served on the plaintiff on March 26, 2009. Defendant Skerpon claims that the plaintiff failed to either respond to the discovery requests or request an extension of time to do so. For the first time, in her motion for summary judgment, defendant Skerpon brought the issue before the court arguing that because the discovery deadline had since passed it would be prejudicial and unfair to permit the plaintiff more time to fulfill his discovery obligations. Defendant Skerpon further argues that she is entitled to the remedies set forth in [Fed.R.Civ.P. 37(b)(2)(A)](), (C), that the plaintiff should not be permitted to put in any evidence on the issues of liability or damages, and that the plaintiff's amended complaint should be stricken.

Upon review, the court finds that the discovery sanctions sought by defendant Skerpon against the plaintiff are not warranted at this time. Although defendant Skerpon served the discovery requests upon the plaintiff in March of 2009, she did not inquire as to the status of any responses until just prior to filing the instant motion for summary judgment. Prior to seeking sanctions in her motion for summary judgment, defendant Skerpon failed to first follow the specified procedures preferred by the court in resolving

15

discovery related issues, such as requesting a telephonic conference with the court to resolve any discovery related issues or filing a motion to compel pursuant to Fed.R.Civ.P. 37(a). As such, defendant Skerpon's motion for sanctions will be denied. However, following a conference held with counsel, the court will order the plaintiff to supply any outstanding discovery, on or before January 26, 2010. To the extent that the plaintiff fails to follow any directives of the court related to discovery matters set at the conference, the issue of sanctions may then be reconsidered.

In light of the above, **IT IS HEREBY ORDERED THAT:**

**(1)** the Shaw defendants' motion for summary judgment, **(Doc. No. 14)**, is **DENIED**; and,

**(2)** defendant Skerpon's motion for summary judgment, **(Doc. No. 16)**, is **DENIED**;

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** January 15, 2010

O:\shared\MEMORANDA\2008 MEMORANDA\08-1337-01.wpd